UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

JUN - 3 2010

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| SALVADOR ROCHA LINAN, | ) | 4:10CR00295CEJ |
| a/k/a "Chava," | ) | |
| EDWARDO ARMANDO WILSON, | ) | Count I |
| EMMANUEL GATHRITE, | ) | Count I |
| a/k/a "Moe," | ) | |
| DAVID INGRAM HENDERSON, | ) | Counts I, II, VIII, IX |
| a/k/a "Soup," | ) | |
| COREY T. FRANKLIN, | ) | Counts I, IX |
| a/k/a "Nut," | ) | |
| NICHOLAS LAMAR BATES, | ) | Counts I, III, IV, V, VI, VII, IX, X |
| EDDIE CHARLES MACKEY, JR., | ) | Counts I, IX |
| a/k/a "Taz," | ) | |
| RICCO PEREZ JOHNSON, | ) | Counts I, II, IX |
| a/k/a "Smoke," | ) | |
| FREDERIC LAMONT CALDWELL, | ) | Counts I, II |
| a/k/a "Doc," | ) | |
| TOMMY LEE TOLLIVER, | ) | Count I |
| a/k/a "Tommy Guns," | ) | |
| STANLEY CHRISTOPHER BATES, | ) | Counts I, IX |
| SEAN RYAN McQUILLER, | ) | Counts I, II |
| a/k/a "Baby Boy," | ) | |
| JESSE JAMES NELSON, | ) | Counts I, IX |
| a/k/a "Outlaw," | ) | |
| CORNELL ROLAND ALLEN, | ) | Counts I |
| a/k/a "Big Buff," | ) | |
| JUSTIN STRAIN, | ) | Counts I, IX |
| ASKIA INGRAM, | ) | Counts I, IX |
| MICHAEL DAVID HARRIS, | ) | Count I |
| JOHN GADDY, | ) | Count I |
| a/k/a "DB," | ) | |
| STEVEN PHILLIPS, | ) | Counts I, II, IX |
| a/k/a "Stevie Gunna," | ) | |
| BRYANT HANCOCK, | ) | Count I |
| a/k/a "Beano," | ) | |
| KIESHA TAMIA GIVENS, | ) | Counts I, V |

| | |
|---|---|
| **BRITTANY DORINE CORNELL,** | ) **Counts I, IX** |
| **APRIL DIONNE FULTZ,** | ) **Count I** |
| **a/k/a "AP," and** | ) |
| **LATONYA TRENEE MOORE,** | ) **Count X** |
| | ) |
| **Defendants.** | ) |

## INDICTMENT

### COUNT I
### CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE MARIJUANA

The Grand Jury charges that:

A.    Beginning at a time unknown but including the period from Summer 2006 and

continuing thereafter until the date of this Indictment, with the exact dates unknown to this Grand

Jury, in the City of St. Louis and St. Louis County, in the Eastern District of Missouri and

elsewhere,

> **SALVADOR ROCHA LINAN, a/k/a "Chava,"**
> **EDWARDO ARMANDO WILSON,**
> **EMMANUEL GATHRITE, a/k/a "Moe,"**
> **DAVID INGRAM HENDERSON, a/k/a "Soup,"**
> **COREY T. FRANKLIN, a/k/a "Nut,"**
> **NICHOLAS LAMAR BATES,**
> **EDDIE CHARLES MACKEY, JR., a/k/a "Taz,"**
> **RICCO PEREZ JOHNSON, a/k/a "Smoke,"**
> **FREDERIC LAMONT CALDWELL, a/k/a "Doc,"**
> **TOMMY LEE TOLLIVER, a/k/a "Tommy Guns,"**
> **STANLEY CHRISTOPHER BATES,**
> **SEAN RYAN McQUILLER, a/k/a "Baby Boy,"**
> **JESSE JAMES NELSON, a/k/a "Outlaw,"**
> **CORNELL ROLAND ALLEN, a/k/a "Big Buff,"**
> **JUSTIN STRAIN,**
> **ASKIA INGRAM,**
> **MICHAEL DAVID HARRIS,**
> **JOHN GADDY, a/k/a "DB,"**
> **STEVEN PHILLIPS, a/k/a "Stevie Gunna,"**
> **BRYANT HANCOCK, a/k/a "Beano,"**

2

## KIESHA TAMIA GIVENS, BRITTANY DORINE CORNELL, and APRIL DIONNE FULTZ, a/k/a "AP,"

the defendants herein, did knowingly and willfully conspire, combine, confederate and agree with each other and with other persons known and unknown to this Grand Jury, to commit offenses against the United States to wit: to distribute and possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

### B.   MANNER AND MEANS OF THE CONSPIRACY

The defendants accomplished and attempted to accomplish the objects of the conspiracy in the following manner and through the following means:

1.   It is part of said drug trafficking conspiracy that members of the conspiracy arranged for the repeated transportation of large quantities of bulk marijuana from Arizona to the Eastern District of Missouri.

2.   It is further part of said drug trafficking conspiracy that members of the conspiracy used multiple rental vehicles from various states to transport large quantities of bulk marijuana from Arizona to the Eastern District of Missouri.

3.   It is further part of said drug trafficking conspiracy that during transportation of the bulk marijuana, one member of the conspiracy would drive a rental vehicle loaded with marijuana while other conspiracy members would occupy decoy rental vehicles designed to direct law enforcement attention away from the loaded rental vehicle.

4.   It is further part of said drug trafficking conspiracy that members of the conspiracy would generate proceeds from the sale of large quantities of marijuana.

3

5. It is further part of said drug trafficking conspiracy that members of the conspiracy would use banks or casinos to exchange smaller bills generated from the sale of marijuana for larger bills which made it easier to conceal and transport said drug proceeds.

6. It is further part of said drug trafficking conspiracy that proceeds generated from the sales of marijuana were transported via airline, bus or car to the sources of supply in Arizona to facilitate further shipments.

7. It is further part of said drug trafficking conspiracy that members of the conspiracy used telephones and cellular telephones to arrange for obtaining, purchasing, transporting and selling marijuana.

8. It is further part of said drug trafficking conspiracy that SALVADOR ROCHA LINAN, a/k/a "Chava," served as a source of supply of bulk marijuana to the conspiracy.

9. It is further part of said drug trafficking conspiracy that LINAN repeatedly used a telephone to cause and facilitate the distribution and possession with intent to distribute marijuana.

10. It is further part of said drug trafficking conspiracy that EDWARDO ARMANDO WILSON served as a source of supply of bulk marijuana to the conspiracy.

11. It is further part of said drug trafficking conspiracy that WILSON oversaw the transportation of marijuana form Arizona to the Eastern District of Missouri.

12. It is further part of said drug trafficking conspiracy that EMMANUEL GATHRITE, a/k/a "Moe," served as a source of supply of bulk marijuana to the conspiracy.

13. It is further part of said drug trafficking conspiracy that GATHRITE repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

4

14.     It is further part of said drug trafficking conspiracy that DAVID INGRAM
HENDERSON, a/k/a "Soup," served as the leader of the drug trafficking conspiracy.

15.     It is further part of said drug trafficking conspiracy that HENDERSON repeatedly
used a telephone to cause and facilitate the distribution and possession with intent to distribute
marijuana.

16.     It is further part of said drug trafficking conspiracy that HENDERSON
coordinated the transportation of bulk quantities of marijuana from Arizona to the Eastern
District of Missouri and large sums of U.S. currency which constituted drug proceeds from the
Eastern District of Missouri to Arizona.

17.     It is further part of said drug trafficking conspiracy that COREY T. FRANKLIN,
a/k/a "Nut," served as a cell head of the drug trafficking conspiracy collecting drug proceeds to
send to Arizona to obtain additional quantities of bulk marijuana and employing couriers to
transport said proceeds.

18.     It is further part of said drug trafficking conspiracy that FRANKLIN repeatedly
used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

19.     It is further part of said drug trafficking conspiracy that NICHOLAS LAMAR
BATES served as a distributor for the conspiracy.

20.     It is further part of said drug trafficking conspiracy that NICHOLAS LAMAR
BATES arranged for the conversion of drug proceeds from small bills to larger bills which made
it easier to conceal and transport from the Eastern District of Missouri to Arizona.

21.     It is further part of said drug trafficking conspiracy that NICHOLAS LAMAR
BATES repeatedly used a telephone to facilitate the distribution and possession with intent to

5

distribute marijuana.

22.     It is further part of said drug trafficking conspiracy that EDDIE CHARLES
MACKEY, JR., a/k/a "Taz," served as a coordinator of the transportation of bulk marijuana from
Arizona to the Eastern District of Missouri and recruited accomplices for same.

23.     It is further part of said drug trafficking conspiracy that MACKEY repeatedly
used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

24.     It is further part of said drug trafficking conspiracy that RICCO PEREZ
JOHNSON, a/k/a "Smoke," rode in decoy vehicles from Arizona to the Eastern District of
Missouri accompanying vehicles loaded with bulk marijuana.

25.     It is further part of said drug trafficking conspiracy that JOHNSON served as a
distributor of marijuana for the conspiracy.

26.     It is further part of said drug trafficking conspiracy that JOHNSON repeatedly
used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

27.     It is further part of said drug trafficking conspiracy that FREDERIC LAMONT
CALDWELL, a/k/a "Doc," assisted in collecting drug proceeds in the Eastern District of
Missouri for transportation to Arizona.

28.     It is further part of said drug trafficking conspiracy that TOMMY LEE
TOLLIVER, a/k/a "Tommy Guns," rode in decoy vehicles from Arizona to the Eastern District
of Missouri accompanying vehicles loaded with bulk marijuana.

29.     It is further part of said drug trafficking conspiracy that TOLLIVER served as a
distributor of marijuana for the conspiracy.

6

30. It is further part of said drug trafficking conspiracy that STANLEY

CHRISTOPHER BATES rode in decoy vehicles from Arizona to the Eastern District of Missouri accompanying vehicles loaded with bulk marijuana.

31. It is further part of said drug trafficking conspiracy that STANLEY CHRISTOPHER BATES served as a distributor of marijuana for the conspiracy.

32. It is further part of said drug trafficking conspiracy that STANLEY CHRISTOPHER BATES repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

33. It is further part of said drug trafficking conspiracy that SEAN RYAN McQUILLER, a/k/a "Baby Boy," rode in decoy vehicles from Arizona to the Eastern District of Missouri accompanying vehicles loaded with bulk marijuana.

34. It is further part of said drug trafficking conspiracy that McQUILLER served as a distributor of marijuana for the conspiracy.

35. It is further part of said drug trafficking conspiracy that McQUILLER repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

36. It is further part of said drug trafficking conspiracy that JESSE JAMES NELSON, a/k/a "Outlaw," drove loads of bulk marijuana from Arizona to the Eastern District of Missouri and transported drug proceeds from the Eastern District of Missouri to Arizona.

37. It is further part of said drug trafficking conspiracy that NELSON served as a distributor of marijuana for the conspiracy.

38. It is further part of said drug trafficking conspiracy that NELSON used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

7

39. It is further part of said drug trafficking conspiracy that CORNELL ROLAND ALLEN, a/k/a "Big Buff," rode in decoy vehicles from Arizona to the Eastern District of Missouri accompanying vehicles loaded with bulk marijuana.

40. It is further part of said drug trafficking conspiracy that ALLEN served as a distributor of marijuana for the conspiracy.

41. It is further part of said drug trafficking conspiracy that ALLEN repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

42. It is further part of said drug trafficking conspiracy that JUSTIN STRAIN drove loads of bulk marijuana from Arizona to the Eastern District of Missouri and transported drug proceeds from the Eastern District of Missouri to Arizona.

43. It is further part of said drug trafficking conspiracy that STRAIN served as a distributor of marijuana for the conspiracy.

44. It is further part of said drug trafficking conspiracy that ASKIA INGRAM served as a courier of drug proceeds transporting same from the Eastern District of Missouri to Arizona to ensure continued shipments of bulk marijuana from Arizona to the Eastern District of Missouri.

45. It is further part of said drug trafficking conspiracy that MICHAEL DAVID HARRIS served as a facilitator for GATHRITE, coordinating arrangements for transportation of bulk marijuana.

46. It is further part of said drug trafficking conspiracy that HARRIS repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

8

47.     It is further part of said drug trafficking conspiracy that JOHN GADDY, a/k/a "DB," rode in decoy vehicles from Arizona to the Eastern District of Missouri accompanying vehicles loaded with bulk marijuana.

48.     It is further part of said drug trafficking conspiracy that GADDY served as a distributor of marijuana for the conspiracy.

49.     It is further part of said drug trafficking conspiracy that GADDY repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

50.     It is further part of said drug trafficking conspiracy that STEVEN PHILLIPS, a/k/a "Stevie Gunna," transported drug proceeds from the Eastern District of Missouri to Arizona.

51.     It is further part of said drug trafficking conspiracy that PHILLIPS served as a distributor of marijuana for the conspiracy.

52.     It is further part of said drug trafficking conspiracy that PHILLIPS repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

53.     It is further part of said drug trafficking conspiracy that BRYANT HANCOCK, a/k/a "Beano," rode in decoy vehicles from Arizona to the Eastern District of Missouri accompanying vehicles loaded with bulk marijuana.

54.     It is further part of said drug trafficking conspiracy that HANCOCK served as a distributor of marijuana for the conspiracy.

55.     It is further part of said drug trafficking conspiracy that HANCOCK repeatedly used a telephone to facilitate the distribution and possession with intent to distribute marijuana.

56.     It is further part of said drug trafficking conspiracy that KIESHA TAMIA GIVENS provided a location for NICHOLAS LAMAR BATES and other members of the

9

conspiracy to break down, repackage and sell marijuana.

57. It is further part of said drug trafficking conspiracy that BRITTANY DORINE CORNELL facilitated the conspiracy by exchanging smaller bills generated from the sale of marijuana for larger bills which made it easier to conceal and transport said drug proceeds.

58. It is further part of said drug trafficking conspiracy that CORNELL facilitated the conspiracy by managing bank accounts used to pay for rental vehicles and other costs associated with the transportation of marijuana and drug proceeds.

59. It is further part of said drug trafficking conspiracy that APRIL DIONNE FULTZ, a/k/a "AP," rode in decoy vehicles from Arizona to the Eastern District of Missouri accompanying vehicles loaded with bulk marijuana.

60. It is further part of said drug trafficking conspiracy that FULTZ transported drug proceeds from the Eastern District of Missouri to Arizona.

61. It is further part of said drug trafficking conspiracy that on or about March 25, 2007, a vehicle occupied by Shawn Mahler and Amanda Rhodes transported 59.3 kilograms of marijuana.

62. It is further part of said drug trafficking conspiracy that on or about February 2, 2008, HENDERSON and others were in a vehicle in Nebraska in possession of $34,096 which was drug proceeds.

63. It is further part of said drug trafficking conspiracy that on or about April 22, 2008, Kayla White was operating a vehicle in Arizona which contained approximately 104.5 pounds of marijuana.

10

64.     It is further part of said drug trafficking conspiracy that on or about April 22,
2008, in Arizona, FULTZ, TOLLIVER, and JOHNSON were traveling in a decoy vehicle
designed to direct law enforcement attention away from Kayla White's load vehicle.

65.     It is further part of said drug trafficking conspiracy that on or about May 9, 2008,
JOHNSON and another individual were in possession of approximately 49 pounds of marijuana
while traveling on a Greyhound bus in Alamogordo, New Mexico.

66.     It is further part of said drug trafficking conspiracy that on or about September 8,
2008, TOLLIVER operated a vehicle in the City of St. Louis, Missouri, which contained
marijuana.

67.     It is further part of said drug trafficking conspiracy that on or about September 16,
2008, ALLEN occupied a vehicle in St. Louis County, Missouri, which contained marijuana.

68.     It is further part of said drug trafficking conspiracy that on or about January 17,
2009, WILSON and Daniel Hernandez-Hernandez occupied a vehicle in the Eastern District of
Missouri which contained plastic bags of marijuana sale proceeds secreted on Hernandez-
Hernandez's person and in the air filter compartment of the vehicle. The currency totaled
$90,681.

69.     It is further part of said drug trafficking conspiracy that on or about January 17,
2009, approximately 25 pounds of marijuana, a .38 special revolver and drug parphernalia were
located at 5439 Knollcreek, Apartment E in St. Louis County, Missouri.

70.     It is further part of said drug trafficking conspiracy that on or about February 28,
2009, Sarah Fahr was operating a vehicle in Nebraska that contained approximately 225 pounds
of marijuana.

11

71. It is further part of said drug trafficking conspiracy that on or about June 23, 2009, at Sky Harbor International Airport in Phoenix, Arizona, INGRAM and Cecil Farrell possessed $41,050 in U.S. currency and $41,100 in U.S. currency, respectively, which were drug proceeds.

72. It is further part of said drug trafficking conspiracy that on or about July 17, 2009, TOLLIVER and HANCOCK occupied a vehicle in the City of St. Louis, Missouri which contained marijuana.

73. It is further part of said drug trafficking conspiracy that on or about August 13, 2009, members of the drug trafficking conspiracy collected large amounts of drug proceeds for transportation to Arizona and gathered to assemble same at FRANKLIN's residence at 14293 Cape Horn Place in St. Louis County, Missouri.

74. It is further part of said drug trafficking conspiracy that on or about December 16, 2009, in Arizona, LINAN possessed approximately 34.66 pounds of marijuana.

75. It is further part of said drug trafficking conspiracy that on or about January 20, 2010, NICHOLAS LAMAR BATES provided STRAIN with U.S. currency which was drug proceeds for transportation to Arizona as payment for a shipment of marijuana. STRAIN was carrying $41,900 in U.S. currency in his pants pockets and socks at St. Louis Lambert International Airport as he prepared to board a flight for Phoenix, Arizona.

76. It is further part of said drug trafficking conspiracy that on or about March 4, 2010, members of the conspiracy possessed approximately $207,440 in U.S. currency, which was drug proceeds in St. Charles County, Missouri.

12

All in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and

The quantity of marijuana involved in the offense was in excess of 1,000 kilograms,

punishable under Title 21, United States Code, Section 841(b)(1)(A)(vii).

## COUNT II
## CONSPIRACY TO MANUFACTURE MARIJUANA

The Grand Jury further charges that:

A.     Beginning at a time unknown but including the period from 2006 and continuing

thereafter until the date of this Indictment, with the exact dates unknown to this Grand Jury, in

St. Louis County, in the Eastern District of Missouri and elsewhere,

### DAVID INGRAM HENDERSON, a/k/a "Soup,"
### FREDERIC LAMONT CALDWELL, a/k/a "Doc,"
### RICCO PEREZ JOHNSON, a/k/a "Smoke,"
### SEAN RYAN McQUILLER, a/k/a "Baby Boy," and
### STEVEN PHILLIPS, a/k/a "Stevie Gunna,"

the defendants herein, did knowingly and willfully conspire, combine, confederate and agree with

each other and with other persons unknown to this Grand Jury to commit offenses against the

United States to wit: to manufacture marijuana by producing, preparing and propagating

marijuana plants, a Schedule I controlled substance, in violation of Title 21, United States Code,

Section 841(a)(1).

### B.     MANNER AND MEANS OF THE CONSPIRACY

The defendants accomplished and attempted to accomplish the objects of the conspiracy

in the following manner and through the following means:

1.     It is part of said drug manufacturing conspiracy that DAVID INGRAM

HENDERSON, a/k/a "Soup," oversaw several indoor marijuana grow operations and

13

coordinated the involvement and activities of other members of the conspiracy.

2.    It is further part of said drug manufacturing conspiracy that HENDERSON repeatedly used a telephone to facilitate the manufacture of marijuana.

3.    It is further part of said drug manufacturing conspiracy that FREDERIC LAMONT CALDWELL, a/k/a "Doc," assisted in establishing various marijuana grow sites including obtaining seeds from Amsterdam in the Netherlands, providing equipment and tending plants.

4.    It is further part of said drug manufacturing conspiracy that CALDWELL repeatedly used a telephone to facilitate the manufacture of marijuana.

5.    It is further part of said drug manufacturing conspiracy that on or about October 5, 2009, RICCO PEREZ JOHNSON, a/k/a "Smoke" operated an indoor marijuana grow and possessed firearms and scales at his residence at 3118 Sidney, St. Louis, Missouri.

6.    It is further part of said drug manufacturing conspiracy that on or about August 2009, SEAN RYAN McQUILLER, a/k/a "Baby Boy," traveled to Amsterdam and obtained marijuana seeds for use in the conspiracy's indoor marijuana grow operations.

7.    It is further part of said drug manufacturing conspiracy that STEVEN PHILLIPS, a/k/a "Stevie Gunna," furthered the objectives of the conspiracy by tending plants in the indoor grow operations.

8.    It is further part of said drug manufacturing conspiracy that on or about March 10, 2009, McQUILLER possessed an indoor marijuana grow operation and two firearms at his residence at 609 Fassen in the City of St. Louis.

14

9.    It is further part of said drug trafficking conspiracy that on or about December 17,

2009, 463 marijuana plants were located at 2680 Adie Road in St. Louis County, Missouri.

10.   It is further part of said drug trafficking conspiracy that on or about December 17,

2009, 76 marijuana plants were located at 7008 Greenhaven in St. Louis County, Missouri.

11.   It is further part of said drug trafficking conspiracy that on or about December 17,

2009, 65 marijuana plants were located at 937 Chula in St. Louis County, Missouri.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and

The offense involved in excess of 1,000 marijuana plants, punishable under Title 21,

United States Code, Section 841(b)(1)(A)(vii).

## COUNT III
## POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA

The Grand Jury further charges that:

On or about August 16, 2008, in St. Louis County, in the Eastern District of Missouri, the
defendant,

## NICHOLAS LAMAR BATES,

did knowingly and intentionally possess with the intent to distribute marijuana, a Schedule I

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT IV
## POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING
## CRIME

On or about August 16, 2008, in St. Louis County, in the Eastern District of Missouri, the

defendant,

15

## NICHOLAS LAMAR BATES,

in furtherance of a drug trafficking crime, to wit: possession with intent to distribute marijuana,

as charged in Count III, did possess a firearm, to wit: a Smith & Wesson, Model SW40VE, .40

caliber semi-automatic pistol bearing serial number RBE3912.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT V
## POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA

The Grand Jury further charges that:

On or about January 17, 2009, in St. Louis County, in the Eastern District of Missouri, the

defendants,

### NICHOLAS LAMAR BATES and
### KIESHA TAMIA GIVENS,

did knowingly and intentionally possess with the intent to distribute marijuana, a Schedule I

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States

Code, Section 2.

## COUNT VI
## POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA

The Grand Jury further charges that:

On or about March 9, 2010, in St. Louis County, in the Eastern District of Missouri, the

defendant,

### NICHOLAS LAMAR BATES,

did knowingly and intentionally possess with the intent to distribute marijuana, a Schedule I

16

controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1).

## COUNT VII
## POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME

On or about March 9, 2010, in St. Louis County, in the Eastern District of Missouri, the

defendant,

### NICHOLAS LAMAR BATES,

in furtherance of a drug trafficking crime, to wit: possession with intent to distribute marijuana,

as charged in Count VI, did possess a firearm, to wit: a Smith & Wesson, Model SW9VE, 9 mm

pistol bearing serial number DTF5467.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT VIII
## MANUFACTURE OF MARIJUANA

Beginning at a time unknown, but including on or about December 17, 2009, in St. Louis

County, in the Eastern District of Missouri, the defendant,

### DAVID INGRAM HENDERSON, a/k/a "Soup,"

did knowingly and intentionally manufacture by producing, preparing and propagating marijuana

plants, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1); and

The offense involved the manufacture by producing, preparing and propagating of in

excess of one hundred (100) marijuana plants, punishable under Title 21, United States Code,

Section 841(b)(1)(B)(vii).

17

## COUNT IX
## MONEY LAUNDERING

The Grand Jury further charges that:

A.      Beginning at a time unknown to the Grand Jury, but including Summer 2006 and

continuing thereafter to and including the date of this Indictment, with the exact dates unknown

to this Grand Jury, in the Eastern District of Missouri and elsewhere, the defendants,

**DAVID INGRAM HENDERSON, a/k/a "Soup,"
COREY T. FRANKLIN, a/k/a "Nut,"
NICHOLAS LAMAR BATES,
EDDIE CHARLES MACKEY, JR., a/k/a "Taz,"
RICCO PEREZ JOHNSON, a/k/a "Smoke,"
STANLEY CHRISTOPHER BATES,
JESSE JAMES NELSON, a/k/a "Outlaw,"
JUSTIN STRAIN,
ASKIA INGRAM,
STEVEN PHILLIPS, a/k/a "Stevie Gunna," and
BRITTANY DORINE CORNELL,**

did knowingly conspire, combine, confederate and agree with others known and unknown to the

Grand Jury, to commit offenses against the United States, to wit: (a) to knowingly conduct and

attempt to conduct financial transactions affecting interstate commerce, to wit: the exchange of

U.S. currency at National City Bank, a financial institution; and the interstate transfer of U.S.

currency; (b) which in fact involved the proceeds of a specified unlawful activity, to wit: the

conspiracy to distribute and possess with the intent to distribute marijuana in violation of Title

21, United States Code, Sections 846 and 841(a)(1) as described in Count I; and (c) with the

intent to promote the carrying on of specified unlawful activity; and knowing that the

transactions were designed in whole or in part to conceal and disguise the nature, location,

source, ownership, and control of the proceeds of specified unlawful activity.  While conducting

18

and attempting to conduct said financial transactions, the defendants, DAVID INGRAM
HENDERSON, a/k/a "Soup," COREY T. FRANKLIN, a/k/a "Nut," NICHOLAS LAMAR
BATES, EDDIE CHARLES MACKEY, Jr., a/k/a "Taz," RICCO PEREZ JOHNSON, a/k/a
"Smoke," STANLEY CHRISTOPHER BATES, JESSE JAMES NELSON, a/k/a "Outlaw,"
JUSTIN STRAIN, ASKIA INGRAM, STEVEN PHILLIPS, a/k/a "Stevie Gunna," and
BRITTANY DORINE CORNELL, knew that the funds involved in the financial transactions
represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and
1956(a)(1)(B)(i).

B.     MANNER AND MEANS OF THE CONSPIRACY

The defendants accomplished and attempted to accomplish the objects of the conspiracy
in the following manner and through the following means:

1.     It is part of the money laundering conspiracy that the defendants conducted illegal
financial transactions (laundered proceeds) of the sale of marijuana, as alleged in Count I by:
exchanging U.S. currency for larger denominations; transferring said U.S. currency to couriers;
and transporting and transferring said currency to members of the conspiracy in Arizona and
other locations as payment for marijuana.

2.     It is part of the money laundering conspiracy that DAVID INGRAM
HENDERSON, a/k/a "Soup," and NICHOLAS LAMAR BATES exchanged drug proceeds in
small denominations of U.S. currency for different bills in larger denominations.

3.     It is further part of said money laundering conspiracy that HENDERSON and
NICHOLAS LAMAR BATES arranged for couriers to transport in secret large denominations of

19

U.S. currency, which were proceeds from the marijuana trafficking conspiracy, via airline, bus or car from Missouri to Arizona and other locations.

4.     It is further part of said money laundering conspiracy that COREY T.

FRANKLIN, a/k/a "Nut," transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to couriers, who subsequently transferred said currency to members of the conspiracy in Arizona and other locations.

5.     It is further part of said money laundering conspiracy that EDDIE CHARLES MACKEY, Jr., a/k/a "Taz," transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to couriers, who subsequently transferred said currency to members of the conspiracy in Arizona and other locations.

6.     It is further part of said money laundering conspiracy that RICCO PEREZ JOHNSON, a/k/a "Smoke," transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to couriers who subsequently transferred said currency to members of the conspiracy in Arizona and other locations.

7.     It is further part of said money laundering conspiracy that HENDERSON, NICHOLAS LAMAR BATES, BRITTANY DORINE CORNELL, and other members of the conspiracy transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to STANLEY CHRISTOPHER BATES, which he later transferred to members of the conspiracy in Arizona and other locations.

8.     It is further part of said money laundering conspiracy that HENDERSON, NICHOLAS LAMAR BATES, and other members of the conspiracy transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to JESSE JAMES NELSON, a/k/a

20

"Outlaw," which he later transferred to members of the conspiracy in Arizona and other locations.

9.    It is further part of said money laundering conspiracy that HENDERSON, NICHOLAS LAMAR BATES, BRITTANY DORINE CORNELL, and other members of the conspiracy transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to STRAIN, which he later transferred to members of the conspiracy in Arizona and other locations.

10.    It is further part of said money laundering conspiracy that HENDERSON, FRANKLIN, and other members of the conspiracy transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to ASKIA INGRAM which he later transferred to members of the conspiracy in Arizona and other locations.

11.    It is further part of said money laundering conspiracy that on June 23, 2009, INGRAM was carrying approximately $41,050 in U.S. currency which he intended to transfer to members of the conspiracy in Arizona.

12.    It is further part of said money laundering conspiracy that HENDERSON, JOHNSON, and other members of the conspiracy transferred U.S. currency, which was proceeds from the marijuana trafficking conspiracy to STEVEN PHILLIPS, a/k/a "Stevie Gunna," which he later transferred to members of the conspiracy in Arizona and other locations.

13.    It is further part of said money laundering conspiracy that bank tellers at National City Bank, including CORNELL, exchanged small denominations of U.S. currency for larger denominations for HENDERSON and NICHOLAS LAMAR BATES.

21

14.    It is further part of said money laundering conspiracy that CORNELL either immediately gave the larger denominations of U.S. currency to members of the conspiracy or deposited them in a safety deposit box from which members of the conspiracy later retrieved the larger denomination currency.

15.    It is further part of said money laundering trafficking conspiracy that members of the conspiracy exchanged the U.S. currency for larger denominations in order to make it easier to conceal and transport larger sums of money.

16.    It is further part of said money laundering trafficking conspiracy that members of the conspiracy exchanged the U.S. currency for different bills in order to obtain bills that could not be associated with drug sales by their serial numbers or by a canine response for traces of drugs.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT X
## MONEY LAUNDERING

The Grand Jury further charges that:

A.    Beginning at a time unknown to the Grand Jury, but including June 2009 and continuing thereafter to and including the date of this Indictment, with the exact dates unknown to this Grand Jury, in the Eastern District of Missouri and elsewhere, the defendants,

## NICHOLAS LAMAR BATES and
## LATONYA TRENEE MOORE

did knowingly conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, to wit: (a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce,

22

to wit: the exchange of U.S. currency at Ameristar Casino, a financial institution; (b) which in fact involved the proceeds of a specified unlawful activity, to wit: the conspiracy to distribute and possess with the intent to distribute marijuana in violation of Title 21, United States Code, Sections 846 and 841(a)(1) as described in Count I; and (c) with the intent to promote the carrying on of specified unlawful activity; and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity. While conducting and attempting to conduct said financial transactions, the defendants, NICHOLAS LAMAR BATES and LATONYA MOORE, knew that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(h).

B.    MANNER AND MEANS OF THE CONSPIRACY

The defendants accomplished and attempted to accomplish the objects of the conspiracy in the following manner and through the following means:

1.    It is part of the money laundering conspiracy that on June 26, 2009, NICHOLAS LAMAR BATES and MOORE went to the Ameristar Casino to exchange drug proceeds in U.S. currency in small denominations for bills in larger denominations.

2.    It is further part of said money laundering conspiracy that NICHOLAS LAMAR BATES and MOORE inserted up to $1,000 of U.S. currency, which was proceeds from the marijuana trafficking conspiracy, into slot machines, and immediately printed out paper vouchers from those machines for the money that they had just inserted.

23

3. It is further part of said money laundering conspiracy that NICHOLAS LAMAR BATES and MOORE did not gamble with any of the money they inserted into the slot machines.

4. It is further part of said money laundering conspiracy that NICHOLAS LAMAR BATES and MOORE took the paper vouchers from the slot machines and cashed out the full amount they had inserted, totaling $13,660 of U.S. currency.

5. It is further part of said money laundering conspiracy that NICHOLAS LAMAR BATES and MOORE asked that the $13,660 of U.S. currency be cashed out in large denominations.

6. It is further part of said money laundering trafficking conspiracy that NICHOLAS LAMAR BATES and MOORE exchanged the U.S. currency for larger denominations in order to make it easier to conceal and transport larger sums of money.

7. It is further part of said money laundering trafficking conspiracy that NICHOLAS LAMAR BATES and MOORE exchanged the U.S. currency for different bills in order to obtain bills that could not be associated with drug sales by their serial numbers or by a canine response for traces of drugs.

## FORFEITURE ALLEGATION
(DRUG TRAFFICKING)

The Grand Jury further finds by probable cause that:

1. The allegations of Count I of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853.

24

2.     The property, real and personal, of defendants,

**SALVADOR ROCHA LINAN, a/k/a "Chava,"**
**EDWARDO ARMANDO WILSON,**
**EMMANUEL GATHRITE, a/k/a "Moe,"**
**DAVID INGRAM HENDERSON, a/k/a "Soup,"**
**COREY T. FRANKLIN, a/k/a "Nut,"**
**NICHOLAS LAMAR BATES,**
**EDDIE CHARLES MACKEY, JR., a/k/a "Taz,"**
**RICCO PEREZ JOHNSON, a/k/a "Smoke,"**
**FREDERIC LAMONT CALDWELL, a/k/a "Doc,"**
**TOMMY LEE TOLLIVER, a/k/a "Tommy Guns,"**
**STANLEY CHRISTOPHER BATES,**
**SEAN RYAN McQUILLER, a/k/a "Baby Boy,"**
**JESSE JAMES NELSON, a/k/a "Outlaw,"**
**CORNELL ROLAND ALLEN, a/k/a "Big Buff,"**
**JUSTIN STRAIN,**
**ASKIA INGRAM,**
**MICHAEL DAVID HARRIS,**
**JOHN GADDY, a/k/a "DB,"**
**STEVEN PHILLIPS, a/k/a "Stevie Gunna,"**
**BRYANT HANCOCK, a/k/a "Beano,"**
**KIESHA TAMIA GIVENS,**
**BRITTANY DORINE CORNELL,**
**APRIL DIONNE FULTZ, a/k/a "AP," and**
**LATONYA TRENEE MOORE,**

(a)     constituting, or derived from, any proceeds the defendants obtained,

directly or indirectly, as a result of the violation of law set out in Count I

of this Indictment; and

(b)     used, or intended to be used, in any manner or part to commit or to

facilitate the commission of such violations;

is property subject to forfeiture in violation of Title 21, United States Code, Section 853(a).

3.     Subject to forfeiture is approximately $1,000,000 in United States currency in that

such sum in the aggregate is property constituting, or derived from any proceeds the defendants

25

obtained directly or indirectly as a result of the offense alleged in Count I.

4.      Properties specifically subject to forfeiture, as set out at paragraph 2 and 3 above,

include, but are not limited to:

> (a)      $207,440 in U.S. currency seized on March 4, 2010
>
> (b)      $2,900 in U.S. currency seized on March 9, 2010
>
> (c)      2008 Toyota Tundra Pickup VIN# 5TFRV54188X045747
>
> (d)      2008 ATV VIN# 2BVBHCL158V000634
>
> (e)      2008 Toyota Camry VIN# 4T1BK46K28U568916
>
> (f)      1980 Venture Boat, Hull # VNB03264M80H
>
> (g)      2004 Pontiac Grand Prix VIN# 2G2WS522541150605
>
> (h)      2006 Pontiac Grand Prix VIN# 2G2WP552461296915
>
> (i)      2004 Ford Escape VIN# 1FMYU92104KB24406
>
> (j)      2005 Dodge Ram VIN# 1D7HA18N05S140394
>
> (k)      2002 Cadillac Escalade VIN# 1GYEK63N52R172382
>
> (l)      2002 Chevrolet Suburban VIN# 3GNFK16ZX2G305429
>
> (m)      2004 Pontiac Grand Prix VIN# 2G2WP522741204102.

5.      If any of the properties described above, as being subject to forfeiture pursuant to

Title 21, United States Code, Section 853, as a result of any act or omission of the defendant:

> (a)      cannot be located upon the exercise of due diligence;
>
> (b)      have been transferred or sold to, or deposited with, a third party;
>
> (c)      have been placed beyond the jurisdiction of the court;
>
> (d)      have been substantially diminished in value; or

26

(e)     have been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the property described in

paragraphs 2, 3 and 4, above, or elsewhere, as being subject to forfeiture.

## FORFEITURE ALLEGATION
### (MONEY LAUNDERING)

The Grand Jury further finds by probable cause that:

1.      The allegations of Counts IX and X of this Indictment are re-alleged and by this

reference fully incorporated herein for the purpose of alleging forfeitures to the United States of

America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

2.      The property, real and personal, of defendants,

**DAVID INGRAM HENDERSON, a/k/a "Soup,"
COREY T. FRANKLIN, a/k/a "Nut,"
NICHOLAS LAMAR BATES,
EDDIE CHARLES MACKEY, JR., a/k/a "Taz,"
RICCO PEREZ JOHNSON, a/k/a "Smoke,"
STANLEY CHRISTOPHER BATES,
JESSE JAMES NELSON, a/k/a "Outlaw,"
JUSTIN STRAIN,
ASKIA INGRAM,
STEVEN PHILLIPS, a/k/a "Stevie Gunna,"
BRITTANY DORINE CORNELL, and
LATONYA TRENEE MOORE,**

(a)     involved in the violation of law set out in Counts IX and X of this

Indictment, and

(b)     traceable to such property,

is property subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) and

27

Title 28, United States Code, Section 2461(c).

3. The property to be forfeited includes, but is not limited to, the following:

    (a) A sum of money equal to the value of any property involved in the money laundering offenses for which the defendants have been convicted;

    (b) All property constituting the subject matter of the money laundering offenses for which the defendants have been convicted;

    (c) All property used to commit or to facilitate the commission of the money laundering offenses for which the defendants have been convicted.

4. Properties specifically subject to forfeiture, as set out at paragraph 2 and 3 above, include, but are not limited to:

    (a) $207,440 in U.S. currency seized on March 4, 2010

    (b) $2,900 in U.S. currency seized on March 9, 2010

    (c) 2004 Pontiac Grand Prix VIN# 2G2WS522541150605

    (d) 2006 Pontiac Grand Prix VIN# 2G2WP552461296915.

5. If any of the properties described above, as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) have been transferred or sold to, or deposited with, a third party;

    (c) have been placed beyond the jurisdiction of the court;

    (d) have been substantially diminished in value; or

28

(e)    have been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the property described in

paragraphs 2, 3 and 4, above, or elsewhere, as being subject to forfeiture.

A TRUE BILL.

_____

FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
TIFFANY G. BECKER, #77631
Assistant United States Attorney

29